UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI EL-KHALIL,

    Plaintiff,

v.

OAKWOOD HEALTHCARE, INC.,

    Defendant.

Case No. 19-12822
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS [6]**

Dr. Ali El-Khalil, a podiatrist, brings this retaliation suit against Oakwood Healthcare, Inc. ("Oakwood"). He alleges that Oakwood declined to renew his admitting privileges because he blew the whistle about health care fraud that he observed. In turn, Oakwood filed a motion to dismiss for failure to state a claim. The Court concludes that most of El-Khalil's suit will be dismissed but that a limited claim may proceed to discovery.

**I.**

The Court accepts the factual allegations in Dr. El-Khalil's complaint as true and determines whether he has stated a claim that is facially plausible, as the Court must in deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6). *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).

El-Khalil worked for Oakwood as a staff podiatrist from May 2008 through June 2011. (ECF No. 1, PageID.3.) After that tenure ended, El-Khalil received admitting privileges for four Beaumont hospitals run by Oakwood: Dearborn, Taylor, Trenton, and Wayne. (*Id.*) At some point—although the complaint does not say when—Oakwood declined to renew El-Khalil's

admitting privileges at the Dearborn, Trenton, and Wayne facilities. (ECF No. 1, PageID.4.) Some (also unspecified) time later, Oakwood then denied El-Khalil's application to renew his privileges at Beaumont Taylor. (*Id.*)

El-Khalil claims that those actions were illegal, namely because they were retaliation for his whistleblowing under the False Claims Act ("FCA"). *See* 31 U.S.C. § 3730. "Specifically, Plaintiff observed and subsequently reported physicians for providing unnecessary medical services, inappropriately billing Medicare, doing harm to patients and subsequently billing Medicare for said services, and paying kickbacks for referrals for medical consults." (ECF No. 1, PageID.3.) After El-Khalil reported these improper activities to the federal government, he says, Oakwood retaliated by not renewing his admitting privileges at the facilities. (ECF No. 1, PageID.3–4.)

El-Khalil contested the denial of his privileges at Beaumont Taylor—though not at the other three hospitals—through a hearing pursuant to Oakwood's medical staff bylaws. (ECF No. 1, PageID.4.) An internal hospital panel ruled in his favor and "found that the decision not to renew Plaintiff's privileges lacked basis in fact and was arbitrarily discriminatory." (ECF No. 1, PageID.5.) Oakwood then appealed the ruling to Oakwood's Joint Conference Committee ("JCC"), which reversed the panel's decision and ruled against El-Khalil. (*Id.*) The JCC's vote, El-Khalil states, "was in retaliation for Plaintiff reporting Defendant's violations of the False Claims Act." (*Id.*)

Oakwood disputes the allegations and lists three ways in which El-Khalil has failed to state a claim under the FCA: El-Khalil does not have standing, the claim is barred by res judicata, and the lawsuit was filed outside the statute of limitations. The Court will address those in order.

## II.

### A.

Oakwood contends that El-Khalil "lacks standing to sue under the retaliation provision of the FCA because he has not pled that he is an 'employee, contractor, or agent' within the meaning of the statute." (ECF No. 6, PageID.44.) The Court disagrees, finding that El-Khalil has properly pled that he has standing.

A decade ago, Congress made a substantial change to the FCA's retaliation provision. *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1624. The earlier version protected "[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts . . . ." 31 U.S.C. § 3730(h) (1994). By comparison, the current version of the statute protects any "*employee, contractor, or agent* [who] is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts . . . ." 31 U.S.C. § 3730(h)(1) (2010) (emphasis added).

Notably, the current language covers "contractors" and "agents" as well as "employees," and the amendments removed the requirement that the retaliation be committed by the person's "employer." As one treatise states, "it is clear that the purpose was to ensure that the protections of the Act extended beyond a traditional employment relationship." *See* Claire M. Sylvia, The False Claims Act: Fraud Against the Government § 5:5 (2019). "The amendments sought to address court decisions that had concluded that the Act did not protect persons who were not technically employees, such as independent contractors or *doctors without traditional employment relationships with hospitals*." *Id.* (emphasis added). So a complainant no longer needs to be an

3

employee when he blows the whistle against a company. Rather, the protections of the FCA now extend to individuals in nontraditional employment relationships, including independent contractors. *See Ickes v. Nexcare Health Sys., LLC.*, 178 F. Supp. 3d 578, 591 (E.D. Mich. 2016); *Tibor v. Mich. Orthopaedic Inst.*, 72 F. Supp. 3d 750, 759 (E.D. Mich. 2014). And in Michigan, "[p]hysicians with staff privileges at a hospital are generally considered independent contractors." *Powers v. Peoples Cmty. Hosp. Auth.*, 455 N.W.2d 371, 374 (Mich. Ct. App. 1990).

In support of its argument, Oakwood cites only one case, which states that the FCA should not "be read so broadly to include applicants with no prior employment relationship to the prospective employer." *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014). But since El-Khalil does not claim that he was a job applicant, that authority is not on point.

Since El-Khalil was a podiatrist with admitting privileges at certain Oakwood hospitals, he has plausibly pled that he was an "employee, contractor, or agent" of Oakwood. At this stage of the case, he has plausibly pled standing to sue under the FCA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."),

**B.**

Next, Oakwood argues that El-Khalil's claims relating to the Dearborn, Trenton, and Wayne facilities are barred by res judicata. (ECF No. 6, PageID.40.)

The legal doctrine of res judicata, or claim preclusion, bars claims that were actually litigated or could have been litigated in a prior suit. *See Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 835 (6th Cir. 2019). Here, Oakwood asserts that El-Khalil already filed a state-court lawsuit against the company, in July 2015, and that El-Khalil could have litigated the retaliation issues regarding Dearborn, Trenton, and Wayne in that suit. (ECF No. 6, PageID.40–

4

44.) By July 2015, according to Oakwood, El-Khalil's privileges already had expired at those three facilities (but not yet at Beaumont Taylor). (ECF No. 6, PageID.31–32.)

In his response brief, El-Khalil clarifies that this suit alleges retaliation *solely* regarding his privileges at Beaumont Taylor; his complaint only mentions the other three facilities, he says, to support his claim about Taylor. (ECF No. 11, PageID.170.). And Oakwood's motion to dismiss does not raise claim preclusion regarding El-Khalil's claims at Beaumont Taylor.

Based on the briefing, then, the suit has been narrowed: El-Khalil's FCA claim is based on the expiration of admitting privileges at Taylor only. Since Oakwood does not assert that the narrower claim is precluded by El-Khalil's state-court lawsuit, claim preclusion does not bar El-Khalil's FCA claim concerning Beaumont Taylor.

## C.

Finally, Oakwood says that El-Khalil filed suit outside the FCA's statute of limitations. On this issue, the Court concludes that limited discovery is necessary.

A retaliation action under the FCA "may not be brought more than 3 years after the date when the retaliation occurred." 31 U.S.C. § 3730(h)(3). As this complaint was filed on September 27, 2019 (*see* ECF No. 1), El-Khalil's suit must be limited to retaliation that occurred on or after September 27, 2016.

So the question is: When did the retaliation at Taylor occur? The complaint does not make this clear. For starters, El-Khalil appears to allege two sets of retaliatory actions related to his admitting privileges at Taylor. He says that Oakwood denied his renewal application at Taylor because he blew the whistle about health care fraud. And he also says that, for the same whistleblowing, the JCC retaliated against him by reversing an administrative panel's decision in

5

his favor. Since the complaint does not include the dates of these events, it is not completely clear whether either of these retaliation claims is timely.

That said, because the statute of limitations is an affirmative defense, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). It is appropriate to dismiss a case, though, when "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* at 547; *see, e.g.*, *G.G. Marck & Assocs., Inc. v. Peng*, 762 F. App'x 303, 309 (6th Cir. 2019) (holding that a complaint filed in 2017, which pled that a breach of contract occurred in 2005, was affirmatively shown to be outside the six-year statute of limitations). Here, El-Khalil's allegations are temporally vague, but the complaint does not "affirmatively show" that his claims are untimely.

In its motion, Oakwood attempts to fill some gaps via an affidavit from one of its senior vice presidents, who asserts that El-Khalil's non-renewal was finalized outside the limitations period. In particular, the affidavit states: "On *September 22, 2016*, a quorum of the JCC met and decided to uphold the decision of the Taylor Medical Executive Committee not to renew Dr. El-Khalil's privileges at Taylor." (ECF No. 6-2, PageID.53 (emphasis added).) Somewhat cryptically, the affidavit adds: "On *September 27, 2016*, the JCC memorialized its decision from September 22, 2016 in writing." (*Id.* (emphasis added).)

Normally, a court cannot consider matters outside the pleadings, like an affidavit, under Rule 12(b)(6). *See Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016) (citing Fed. R. Civ. P. 12(d)). But here, El-Khalil confirms in his response brief that September 27, 2016, was when Oakwood "finally determined to not renew his privileges at Taylor." (ECF No. 11, PageID.179). "Therefore,"

he says, "for purposes of this motion the operative fact, accepted as true, is that Defendant retaliated against Plaintiff on September 27, 2019." (*Id.*)

That helps to clarify the date of one set of retaliatory actions: the JCC's decision. El-Khalil has averred that the retaliatory decision took place on September 27, 2016, which is the outer limit of the limitations period. Although Oakwood disagrees—arguing that the JCC's determination occurred five days earlier and only became "memorialized" on September 27—the Court cannot resolve that dispute on the face of the complaint. Oakwood argues that the complaint violates the pleading standards of Federal Rule 8 by omitting key dates (ECF No. 6, PageID.27, 33), but the Court will not dismiss the suit on that ground nor will it convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d). Instead, the Court will require the parties to attend a status conference to convene limited discovery on the question of which date the JCC finalized its decision.[1]

This leaves the other set of retaliatory actions: Oakwood's initial denial of El-Khalil's application to renew his admitting privileges at Taylor. Here, too, El-Khalil's complaint fails to list a date. Logically, this denial occurred before the panel's review of that action and also before the JCC's final decision (which El-Khalil says was September 27, 2016). This means that the first alleged retaliation took place much earlier than September 27, 2016, and well outside the statute of limitations. For its part, Oakwood states that El-Khalil's Trenton admitting privileges expired on December 22, 2015, eight days after his renewal application was denied—and almost four years

---

[1] Oakwood also argues that the JCC decision from September 2016 should be considered "post-employment retaliation," which is not covered by the FCA. (ECF No. 6, PageID.36.) But Oakwood also asserts that "Taylor Medical Staff Bylaws set forth a comprehensive 'Hearing and Appellate Review Procedure.'" (ECF No. 6, PageID.30.) Without the benefit of discovery, whether retaliation during the review process should be considered "post-employment relation" is an open question at this stage.

7

before El-Khalil filed this lawsuit. (ECF No. 6, PageID.29.) El-Khalil himself uses this December 22, 2015, date in his response brief. (ECF No. 11, PageID.178.) And he does not dispute that the only conduct that he complains about is the JCC decision. (ECF No. 11, PageID.179 ("When did Defendant retaliate against Plaintiff? Plaintiff says, when Defendant finally determined to not renew his privileges at Taylor and that was on September 27, 2016, when Defendant's Joint Conference Committee refused to renew Plaintiff's privileges.").) So El-Khalil's FCA claim based on the decision to not renew his admitting privileges at Trenton, which took place more than three years before this lawsuit was filed, will be dismissed.

### III.

In conclusion, an issue remains at this stage as to whether the decision by Oakwood's JCC to finalize the denial of El-Khalil's admitting privileges at Beaumont Taylor took place within the statute of limitations (i.e., between September 27, 2016, and September 27, 2019). So Oakwood's motion to dismiss the case in its entirety is DENIED. But to the extent that the allegations included retaliation regarding facilities other than Taylor or the December 2015 non-renewal decision at Taylor, the motion is GRANTED. Before addressing anything else on the merits, the Court will convene a scheduling conference.

SO ORDERED.

Dated: April 20, 2020

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES DISTRICT JUDGE