UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI EL-KHALIL,

    Plaintiff,

v.

OAKWOOD HEALTHCARE, INC.,

    Defendant.

Case No. 19-12822
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING OAKWOOD'S MOTION FOR SUMMARY JUDGMENT [19]**

Dr. Ali El-Khalil, a podiatrist, brings this retaliation suit against Oakwood Healthcare, Inc. under the False Claims Act ("FCA"). *See* 31 U.S.C. § 3730. He alleges that Oakwood declined to renew his medical staff privileges because he blew the whistle about health care fraud that he observed. (ECF No. 1.)

El-Khalil initially based his claims on two acts of alleged retaliation: first, Oakwood's decision to deny his renewal application at Beaumont Hospital in Taylor, Michigan, and second, the decision by Oakwood's Joint Conference Committee ("JCC") to reverse an administrative panel's ruling that the non-renewal was discriminatory. (*Id.*) The Court previously dismissed El-Khalil's claim based on the first decision as time-barred because it clearly took place more than three years before this lawsuit was filed. (ECF No. 13, PageID.201.) While Oakwood argued that the second claim was also time-barred, the Court found it premature to rule on that question before the opportunity for discovery. (*Id.*)

Now at summary judgment, the sole remaining claim in this action is El-Khalil's FCA claim based on the JCC's decision to finalize the denial of El-Khalil's staff privileges at Beaumont Taylor. Oakwood now moves for summary judgment, arguing that this too is time-barred. The Court agrees.

## I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

## II. Analysis

A retaliation action under the FCA "may not be brought more than 3 years after the date *when the retaliation occurred.*" 31 U.S.C. § 3730(h)(3) (emphasis added). The parties do not dispute the underlying facts. They only dispute whether the retaliation occurred when the JCC made its decision or when the JCC memorialized the decision and notified El-Khalil by letter.

El-Khalil filed this action on September 27, 2019. (ECF No. 1.) Oakwood argues that the alleged retaliation occurred when the JCC made its decision on September 22, 2016, several days outside the statute of limitations. (ECF No. 19.) El-Khalil

2

counters that the retaliation occurred when the JCC issued its written decision to Dr. El-Khalil five days later on September 27, 2016—on the latest possible day to file this action three years later. (ECF No. 25, PageID.377.)

The law and the undisputed facts render this claim barred by the statute of limitations. Regarding the facts, there is no dispute that El-Khalil exercised his right to appeal the denial of his reappointment to the medical staff under Taylor Medical Staff Bylaws and the Fair Hearing Plan. (ECF No. 25, PageID.372.) Ultimately, Oakwood's Board of Trustees exercised its right to delegate the final review to the JCC. (ECF No. 25, PageID.374.) There is no dispute that the JCC heard evidence and argument, deliberated, and voted to affirm the decision to deny El-Khalil's reappointment on September 22, 2016. (ECF No. 19-2, PageID.255–256; ECF No. 19-4.) Under the Medical Staff Bylaws, the JCC's decision "will be deemed final, subject to no further appeal." (ECF No. 19-3 PageID,283.)

The Bylaws also state that "[t]he action of the [JCC] and the basis therefore will be promptly communicated to the Practitioner and to the MEC." *Id.* The JJC provided this communication in a writing signed by its chairman on September 27, 2016. (ECF No. 19-5, PageID.308.) The writing advised El-Khalil as follows:

> On September 22, 2016, the JCC convened at Beaumont Health corporate offices in Southfield. A quorum of the Committee was present. Written appeal statements were submitted and oral argument conducted by the parties' respective counsel. The Committee determined that all procedural requirements regarding the appeal contained in the Fair Hearing policy had been met.
>
> The Committee heard oral argument, reviewed the written appeal statements, familiarized itself with the record made at the hearing and the hearing panel's report, and reviewed the history of corrective actions

3

involving Dr. El-Khalil. After discussion the Committee agreed that Dr. El-Khalil had not met the burden of proof applicable to appeals to the Board, which burden is contained in the Beaumont Hospital, Taylor (Section 3.7) Medical Staff Fair Hearing Plan: Dr. El-Khalil did not show in the Board Review that the MEC's Adverse Action lacked basis in fact or was arbitrary, capricious or impermissibly discriminatory.

Accordingly, the JCC affirms the original Adverse Action of the Beaumont Hospital, Taylor Medical Executive Committee, and declines to reappoint Dr. El-Khalil to the Beaumont Hospital, Taylor medical staff.

This action is final and is subject to no further appeal.

(*Id.*)

This document, says Dr. El-Khalil, is "the only [one] memorializing the JCC Decision denying [him] reappointment." (ECF No. 25, PageID.375.) True. But it does not change the fact that the "JCC Decision" it memorializes was made on September 22, 2016. And that decision is the alleged retaliation. (*See* ECF 1, PageID.5.) The same problem arises with Dr. El-Khalil's reliance on the deposition testimony of JCC member Dr. David Walters. More specifically, Dr. Walters testified that, in the normal course of business, if any decision is written out by the JCC, it has to be signed by the chairman. (ECF No. 19-6, PageID.313.) Thus, Dr. El-Khalil seems to be suggesting that the JCC must have made its decision on September 27, 2016 when the JCC chairman signed the communication. (ECF No. 25, PageID.376.) But again, the undisputed facts reveal that the JCC did not write out the decision to affirm the denial of Dr. El-Khalil's staff privileges. They made that decision by vote at the end of their meeting. What was written out for the chairman's signature was the communication advising Dr. El-Khalil of that decision. In other words, the September 22, 2016 decision was communicated via writing on September 27, 2016. In sum, Dr.

4

El-Khalil has provided no evidence that would permit a rational trier of fact to find that the JCC's decision-making process extended to the communication of its decision.

Regarding the law, "[T]he default rule [is] that Congress generally drafts statutes of limitations to begin when the cause of action accrues." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 418 (2005). "Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief." *TRW Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in judgment) (internal quotation marks omitted). El-Khalil had the right to apply to a court for relief from the date that the JCC made its decision. *See also ex rel. Wilson*, 545 U.S. at 418–19 (holding in an FCA action that "where, as the case is here, there are two plausible constructions of a statute of limitations, we should adopt the construction that starts the time limit running when the cause of action (here retaliation) accrues.").

El-Khalil offers no cases for the proposition that a retaliatory action occurs when the whistleblower is notified of an adverse decision, rather than when the decision is made. El-Khalil's only legal argument is to attempt to distinguish Oakwood's discussion of cases involving the Fair Credit Reporting Act and Fair Debt Collection Practices Act. (ECF No. 25, PageID.379.) But Oakwood itself cites those cases to contrast those statutes with the FCA: while Congress has included express language providing that the statute of limitations may begin to run for the FCRA and FDCPA when a plaintiff *discovers* a claim, the FCA only states that the statute of

5

limitations begins to run when the retaliation "occurred."[1] (ECF No. 19, PageID.243–248.) So El-Khalil does not weaken Oakwood's statutory interpretation argument. And El-Khalil does not offer any law or evidence to contradict Oakwood's argument that the statute of limitations began to run when the JCC made its decision.

The Court concludes that El-Khalil's cause of action accrued on the date the JCC voted to deny his reappointment, and therefore the three-year statute of limitations expired five days before he filed this action.

### III. Conclusion

Accordingly, Oakwood's motion for summary judgment is GRANTED. This action is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated: June 1, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE

---

[1] *Compare* 31 U.S.C. § 3730(h)(3) (an FCA retaliation action "may not be brought more than 3 years after the date *when the retaliation occurred*") *and* 15 U.S.C. § 1692k(d) (action under the Fair Debt Collection Practices Act may be brought "within one year from the date on which the violation *occurs*"), *with* 31 U.S.C. § 3731(b)(2) (a qui tam claim is timely if filed within "three years after the date when facts material to the right of action *are known or reasonably should have been known* . . . .") *and* 15 U.S.C. § 1681p (a Fair Credit Reporting Act action "may be brought . . . within two years from the date on which the liability arises, *except that where a defendant has materially and willfully misrepresented any information* . . . [in which case] the action may be brought at any time within two years after discovery by the individual of the misrepresentation").